Good morning, Your Honors. My name is Mark Adams. I speak today for Saul Tapia. He stands convicted of a two-count indictment, charging him with importation and possession of marijuana, and today we seek a new trial. We think there are three significant constitutional reasons why Mr. Tapia is entitled to a new trial. First, and not necessarily foremost, but first, is that new and extraordinary benefits were conferred on the co-defendant and testifying witness, the main testifying witness against Mr. Tapia. These benefits were conferred within hours of the verdict. They were benefits that had been under some discussion, at least by counsel for co-defendant Rivera, from the very beginning of the case. And we did see some extraordinary changes of the charges early on in the case at the first motion hearing on July 9th of 2004. The drug charges against Ms. Rivera were dismissed and Mr. Tapia was acquitted. And we did see some extraordinary changes of the charges early on in the case at the first motion hearing on July 9th of 2004. The drug charges against Ms. Rivera were dismissed and Mr. Tapia was acquitted. And the district court nearly invited that, didn't it? The district court did invite that. The district court was, I think, very clear on the record from the August 6th hearing that it was on his initiative that the case was brought in for a status hearing because of concerns that he had about the possible sentence. Under the plea agreement entered into by Ms. Rivera and her counsel, Ms. Rivas, I'm sorry, I referred to her as Rivera, Ms. Rivas and her counsel, she was facing a guideline range of zero to six months. Based on guideline calculations, base offense level six, minus two for acceptance, level four, no prior record, zero to six months. So if she remained in custody until the sentencing date or the originally established sentencing date of October 15, she would have served just a week under the total six months. Our concern is that the record was really never developed in this regard. The jury never found out that she received an extraordinary benefit. Counsel ---- But why would that matter if she didn't get the benefit until after the jury had completed its deliberations? Why should the jury be told later on, by the way, after you guys got done, she got a better deal? Well, I think it would have been wise for the jury to know or instructive and salient for the jury to know that there were discussions ongoing and that there was a consideration But you don't have any evidence that there were discussions ongoing. Her counsel says, I'm doing everything I can to get her a better deal. But on the day that she testifies, she doesn't have a better deal. Well, we don't know. And no one has conducted the investigation which would allow us to know. So one of the things that we're asking your honors to consider doing is refer the case back for further fact-finding on this issue so that we can examine what happened when. When did Ms. Rivas' counsel have the discussions with counsel? There is evidence in the record, counsel, right? There is evidence in the record. Her counsel says, I didn't get a better deal until the day after. There was evidence in the record based on the discussions that took place on August 9th. That evidence remains, at this point, uncontradicted. You don't have any evidence to contradict that. So we do have evidence on that from her counsel. I believe the government also said there was no deal until the day after the trial was completed. I repeat that again this morning, Judge Bybee, and I don't think that the government said a great deal at that hearing. She did say that they, she did assent to counsel for Ms. Rivas' statement that there was going to be a deferred prosecution. But she did not say that that consideration took place just at the last moment. She did say, and later in the record there's some indication that there was thoughtful consideration given to the question of a deferred prosecution or a dismissal. To my mind, thoughtful consideration is something that takes place in less than literally hours from arguing to the jury, on one hand, that Ms. Rivas did not receive a very good deal, countering the argument of trial counsel for Mr. Tapia, that she received a great deal, that she received a deal where she would get, was hoping for a six-month sentence and hoping for help on the deportation. Counsel for the government then argued in rebuttal that no, she was facing five years in prison and a lengthy supervised release term and likely deportation where she would be ripped from the United States, the only country she really knew since she'd come here when she was two years old to a country that was unfamiliar to her, taken from her friends and her family and her schooling and so on. Your Honors, I do want to turn to two other errors that I think are very significant in the case. One is the statement made by the case agent concerning statements made by Mr. Tapia after his arrest. Case agent McNabb testified that Mr. Tapia's statement was not forthcoming. Quote, I had to make sure I was getting an accurate statement. When a witness comments on the veracity of another witness's testimony, of course, that's improper. And then when the government comments on an accused's right to remain silent, of course, that's improper. And it affects the due process rights of Mr. Tapia here. This is an interesting situation because this case agent has a bachelor's degree in political science and French from Arizona State University. She went on then to study at the Sorbonne in Paris where she received a degree also in French. I think she chose her words with extraordinary care. Forthcoming means available. And when Mr. Tapia asserted his right to remain silent, he became unavailable. And so I think the precision with which that word was chosen can lead us to believe that it was clearly a comment on Mr. Tapia's right to remain silent. It's clearly a comment on whether or not he was a truthful witness to her when she was interviewing him after his arrest. Finally, evidence of Mr. Tapia's lack of employment was argued to the jury as a possible motive. That's clear error. The government concedes that it's impermissible comment on his lack of employment. The question, of course, in these last two issues is whether or not those are plain errors since there was no objection in the trial court. We believe that there is, that these are clear or obvious errors that affect Mr. Tapia's substantial rights, his due process rights, and his rights to remain silent. Finally, we are asking the Court to remand the case for consideration of the effect of 3553A factors. The district court, when it imposed the sentence, was operating during that interim period where the guidelines were still mandatory. The judge specifically selected a sentence at the low end of the guideline range considering all of the factors, but the judge, the court did not consider the 3553A factors. We think also that the remand for further sentencing should be remanded with instructions that no reasonable trier of fact could have found the weight of the marijuana to be between 10 and 20 kilograms. The judge did not consider the fact that the weight of the marijuana to be between 10 and 20 kilograms. The judge did not consider the fact that the weight of the marijuana to be between 10 and 20 kilograms. I would like to reserve my remaining 33 seconds. You may, Counsel. Thank you. Ms. Serrano? Good morning, Your Honors. I'm Alice Adams Serrano for the United States. May it please the Court, Counsel is correct, there are four issues that this Court needs to consider, and I'd like to address the cooperating witness, Maribel Rivas. As Your Honors have correctly noted, there is no evidence that an agreement was reached prior to Ms. Rivas' testifying at trial. I was the prosecutor in this case. I am the one that had to field the phone calls from Ms. Rivas' attorney, Mr. Hermanson, quote, begging, and he did in fact beg for a new deal, and there was no agreement reached. There was nothing. He, from the outset, as the record correctly shows, was asking my office to dismiss all charges against her, and that's not something that my office was willing to do. After trial and after more consideration was given the morning before the August 6th hearing that Judge Moskowitz held concerning the hearing that he put on himself, I did speak with Mr. Hermanson, and I think Mr. Hermanson says, and it's in the record, I'll refer Your Honors to the ER-225, where the whole idea of the deferred was that we were just going to continue, or we were going to contemplate, asking the Court to dismiss all charges against Ms. Rivas. We would continue the sentencing for about a year. There was no flat-out agreement at this point. This was the nature of the discussions, that we were just going to continue it out, and unfortunately, Mr. Hermanson was not able to get all of that out. The district court had some other questions, and that particular fact wasn't able to come out. So, without more, there's nothing to indicate that there was any secret deal. The fact that I moved quickly, the government moved quickly to see, to get some new, a change in the deal with Ms. Rivas is not in and of itself. Normally, people complain that the government takes too long. In this case, it was a matter of, I think the verdict came in about 2 o'clock on a Thursday, and we had a hearing at 830 on Friday morning. So, I guess I moved too quickly. Lastly, one thing I would like to point out is that Counselor Mr. Adams is asking for an evidentiary hearing, and I'm arguing on behalf of the government that Judge Moskowitz did, in fact, conduct a functional equivalent of that. He did inquire of Mr. Hermanson when any discussions, deal, agreement, as such, and that is in the record, and it is clear from Mr. Hermanson's comments that, yes, he, in fact, begged me for a new deal, but that no agreement was reached. Absolutely not. Nothing about pre-trial diversion was, or deferred agreement, or anything else was brought up until after the trial. And that is very clear, and I don't think there's been any evidence disputing that. So, with that, I'll move on to the next issue, unless Your Honors have any questions. Agent McNabb's testimony. The comment forthcoming. I can tell you from speaking with Agent McNabb, and during the course of the trial, and as Your Honors know, Mr. Adams was not trial counsel. The word forthcoming and used in the manner in which he was testifying dealt with the manner in which the defendant gave his post-mortem statements. If she could have used the words pulling teeth, or that it was very fragmented, and I think it's in the record that she says that his answers, the question and answers were very fragmented, that's what the word forthcoming was meant to refer to. I understand in counsel's brief, he cites to the Random House Dictionary in the plain meaning and claims that because Agent McNabb has a degree in French, from a bachelor's degree and whatnot, that she should have known the true meaning or the real meaning of the word forthcoming. And I submit to you, as stated in my papers, that it was more a description of how he was answering the questions. It took five or six questions to get a statement out. And there was no comment whatsoever on the fact that number one, he asked for his parole officer when he was first arrested, or two, that he later invoked. None of that came out, and I don't think counsel is disputing that. So if there are no further questions on that issue, I will move on. The poverty evidence. As I set forth in my papers, there is no question and answer. The comments concerning Mr. Taffey's employment consists of three questions and answers during the midst of an entire cross-examination, a three-day trial, and one comment during closing argument. And the closing argument, I believe, is about... It's a pretty good comment in closing argument. I think you may have learned something from this trial. I did. But so it was, we review under plain error. Correct. But it's not plain error because? Because there's been no showing that it affected his tappiest substantial rights in this case. Again, we're talking about three questions and answers and one comment that I made during closing argument. And looking at all of the other evidence in this case that weighed in favor of the defendant's guilt, concerning the lies that he told to the pre-primary inspector about who owned the car, who he was visiting down in Mexico, his actions, his demeanor, the fact that he made his girlfriend drive a car within a few yards of the border, all of that weighs in favor of the defendant's guilt. Certainly, I don't think the jury would have convicted this defendant just because he didn't have a job and he paid for a rental car and was buying this truck down in Mexico. The manner in which he purchased the truck, he picked up the truck at 3 o'clock in the morning. It's really unreasonable to think that someone, if they're just buying a vehicle, they're going to pick up a car at a dealership or a private party at 3 o'clock in the morning. We talked about a truck. It was a Jeep. It was a Jeep Cherokee. Yes. It was a red Jeep Cherokee. It wasn't like we think about a little pickup truck or something like that. I'm sorry. It was a red Jeep Cherokee. Ms. Rivas referred to the vehicle as a truck. Yes. She called it a truck, but it's really a Jeep Cherokee. Yes. It's the red Jeep Cherokee. So all of that other evidence, everything that else came with it, the amount of marijuana, where it was placed, the fact that the Jeep was shaking, the very clandestine, strange behavior that Mr. Tapia displayed from the moment that they arrived in Mexico to the point that they reached the border, all lend in favor that this defendant knew that there was, in fact, marijuana in the car and that he was trying to get that car into the United States. And, again, certainly a comment that I made and three questions and answers certainly don't rise to a level of plain error to warrant reversal. Lastly, on the sentencing issue, the government concedes. At the time, Judge Moskowitz applied the guidelines as mandatory, and he did not. The record is void of any consideration under the 3553A factors, so it may be appropriate for this Court to remand this case for sentencing so the district court can consider those factors. However, the issue concerning that there was no or no reasonable prior effect to determine that there was or conclude that there was between 10 and 20 kilograms of marijuana in the vehicle set forth in my papers and is argued at the hearing before Judge Moskowitz for motion for a new trial. We have 21 packages here, and they're all contained in the same place, in the gas tank of a vehicle. They're all wrapped the same way, and the jury saw the actual packages. There was a photograph of a shopping cart literally full of marijuana. The secondary inspector, Officer Dufford, testified that they were all wrapped the same way. Now, unfortunately, during the course of these events, the defendant, up until literally the day before, I believe, trial, was going to stipulate that there was, in fact, marijuana, so that all of the bulk marijuana was destroyed. The day of trial, he said, no, no, no, I'm not going to stipulate to that, so it put the government to its proof, and what we had was photographs and a sample, one representative brick sample, plus some other samples that were cut from the other packages of the marijuana. And the chemist testified that the one brick that he had, the representative brick, one of the 21, the packaging weighed approximately 14 percent of the total weight. And just if you're looking at all of the evidence, the fact that all of the marijuana contained the same type of wrapping, it was all in the same place, it is reasonable to assume that they were all wrapped the same way. And even if you took out 14 percent for packaging of 21.95 kilograms, you get somewhere about 18 kilograms of marijuana. And that was the bulk marijuana, including packaging. That's what the 21 packages weighed. And that was the testimony that Officer Dufford testified to. And because the bulk marijuana was destroyed, we only had the one representative sample that the DEA chemist, Mr. Rice, had, along with the representative samples, and he weighed one of the bricks, one of the packages, and that one package had 14 percent packaging. So if you take 14 percent off for packaging for all the packages, even if you take 50 percent off for packaging, 50 percent for packaging, you're still well within the 10 to 20-kilogram range. So I see that I'm out of time. Thank you for Your Honor's attention. Roberts. Mr. Adams. Thank you, Your Honor. Your Honor, I do want to respond to the argument that Government Council made that she moved too quickly. The verdict came in at 3.17. The decision was made at 8.30 the next morning after, quote, thoughtful consideration. I think that thoughtful consideration implies a great deal more than just a few hours. The district court was very concerned because he first heard the testimony at trial. Ms. Rivas, at least once, she had written out the questions and answers that would be elicited from Ms. Rivas, and she knew the story, the whole story, unlike the district court, which of course was hearing it for the first time at trial. And so the district court's concerns arising overnight is not a surprise to me, but thoughtful consideration is much more than just a few hours, particularly in the face of the months of haranguing, if you will. When the government came back the next morning, its position was that they would defer sentencing for a year, leaving her subject to the same crime and punishment and everything else? No, Your Honor. I think the plan was that the prosecution would be deferred. In other words, they would defer sentencing for some period of time. Yeah. And then it was contemplated that the charges would be dismissed. Indeed. But she didn't say that, did she? Counsel for Ms. Rivas said that, and there was no comment, objection or clarification. Well, that's because Judge Moskowitz started talking about that's what ought to happen, wasn't that it? Didn't Judge Moskowitz bring this up? Judge, I think the district court was concerned that he was getting involved with discussions between counsel. He didn't want to intrude on those discussions, but counsel for Ms. Rivas made it very clear that the contemplated end result would be that the charges would ultimately be dismissed. Well, that's what he'd wanted all along. That's what he wanted all along. That's exactly right. Indeed. They leapfrogged the sentencing of Ms. Rivas from October 15th to November 17th, November 17th to January 28th of 2005, when the charges were ultimately dismissed. During that period of time, Ms. Rivas was on pretrial release, if you will, pending sentencing, having been convicted by her plea of the 1001 charge. Thank you for allowing me to go over my time slightly. Thank you, Mr. Adams. And we thank both counsel for the argument, and the court will stand adjourned. All rise. I'll catch up with you. Yeah, Jerry, I think we can go. Well, probably. Thank you.
judges: Thompson, Tashima, Bybee